IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SUMMER JOHNSON,

    PLAINTIFF,

vs.                                                      CASE NO. CV 12-J-3583-S

ARAMARK,

    DEFENDANT.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment, memorandum, and evidence (doc. 19) in support of said motion, to which the plaintiff filed a memorandum and evidence in opposition (doc. 20), and the defendant thereafter filed a reply (doc. 21). Having considered the motion, response, evidence and the relevant law, the court finds as follows:

## FACTUAL BACKGROUND

The plaintiff sues defendant for negligence and wantonness under state law due to injuries she suffered while employed at Children's Hospital as a respiratory therapist. According to the plaintiff, on December 2, 2010, she was on the third floor of the hospital and took the elevator up to the sixth floor. Plaintiff depo. at 166-167. She did not see any indication that floors in the elevators had been cleaned. *Id.*, at 168. She spent about thirty minutes on the sixth floor, again seeing no indication that

the elevator floors had been cleaned, got into an elevator, and began experiencing breathing difficulties. *Id.*, at 163, 167-168; plaintiff's response, at 1-2. No one was on the elevator with her. Plaintiff depo. at 171. The plaintiff saw nothing around the elevator, or inside the elevator, to indicate it had been recently cleaned, but remembers the smell. *Id.*, at 168-169, 171. The floor was not wet. *Id.*, at 169. She did not smell it until she was on the elevator with the doors closed. *Id.*, at 172. She does not remember a distinct odor, but rather remembers it burning, as with an ammonia smell. *Id.*, at 169-170. It smelled like what was used to clean the floors, but stronger. *Id.*, at 170, 280. Her chest began burning. *Id.*, at 163, 173. The plaintiff estimates she was on the elevator for less than thirty seconds before she arrived at her destination floor. *Id.*, at 174. She just remembers she could not breathe, breathing treatments did not help, she was taken to the emergency room, and she then went to another hospital by ambulance. *Id.*, at 163-164.

The elevator floors are made of terrazzo tile, which is a no wax floor. Deposition of Lester Martin (third shift supervisor) depo. at 26, 76. Prior to December 2010, plaintiff had never seen anyone cleaning the floors of the elevators at the hospital. Plaintiff depo. at 124. She did see other floors being cleaned and noted areas taped off for this purpose. *Id.*, at 121. Although she knew lots of people complained about the floor cleaners prior to December 2, 2010, there were no

complaints on record about it. *Id*., at 130-131.

Because of her breathing difficulty, the plaintiff was hospitalized for a week, due to chemically induced asthma. Plaintiff depo. at 200. Although her intake records reflect that she reported coughing for three days and a history of asthma, the plaintiff has no idea why the records state that and says the same is simply not true. *Id*., at 150-151. Similarly, although her discharge records state she had an exacerbation of asthma, she disputes any prior history of it. *Id*., at 270.

Plaintiff's treating pulmonologist has no idea of what chemical may have caused her reaction on December 2, 2010, or whether it was caused by exposure to a chemical at all. Deposition of Dr. William C. Hays, at 44, 58. Upon seeing her for the first time in December 2010, he noted asthma as a new condition for her. *Id*., at 24. In his opinion, the plaintiff was predisposed to having adverse reactions to common substances that would not affect most people. *Id*., at 68. He documented a number of things which irritate plaintiff's airways and has no way to know what caused her condition to occur. *Id*., at 76. Plaintiff has never been told what caused her reaction, but only that it was chemically related or chemically induced asthma. Plaintiff depo. at 138. Prior to December 2010, the plaintiff never had an asthma attack or any sensitivity to a chemical cleaner. Plaintiff depo. at 111.

The plaintiff thinks her asthma attack was induced by floor cleaning in the

elevator because the smell was like the floor stripper she had smelled many times before. Plaintiff depo. at 175. When she returned to work, a member of the cleaning crew told her it was floor cleaner but she does not know who told her this.[1] *Id.* The plaintiff has also had a reaction to Sani-Wipes, which are used to clean stethoscopes and sanitize surfaces in patient rooms. Plaintiff depo. at 68. According to plaintiff, the wipes have a very strong chemical odor. *Id*., at 73. Prior to the December 2010 elevator incident, the plaintiff used Sani-Wipes on a regular basis. *Id*., at 74. After that, based on their smell, plaintiff knew they were potent, so she stopped using them. *Id*. Exposure to them has since caused plaintiff to cough with an itchy throat for which she had to use her inhaler. *Id*., at 69-70, 72, 84, 87.

Defendant Aramark contracts with Children's Hospital to provide cleaning services, and provides the cleaning tools and chemicals, but all cleaning personnel are

---

[1]The best plaintiff can offer in identification of her source of information is

> One was a tall black guy, and the other was just an average black guy. I want to – the average size black guy, I want to say that he went by Lee, but I'm not certain in that.

Plaintiff depo. at 179. When provided potential names and pictures of employees during the relevant time, plaintiff still could not identify these two men. Plaintiff depo. at 179-184. She also agreed that "Lee" might not even be the right name. Plaintiff depo. at 188. According to Archie Henderson, the "tall black guy" was probably Maurice Becoats because he was the tallest person working third shift. Henderson depo. at 49. "Lee" was likely LeAndre Latham, who no longer works for the hospital. Henderson depo. at 49. However, Martin named Chris Bozeman as tall, but not skinny. Martin depo. at 51-52. He also identified Torrence Evans as someone who worked during the relevant time that was tall. Martin depo. at 48-49, 52. However, he thought that the plaintiff could possibly be referring to Maurice Becoats as well. Martin depo. at 54.

employees of the Hospital. Declaration of Archie Henderson (Director of Environmental Services for Aramark), ¶¶ 3-4; depo. of Henderson, at 51-52; depo. of Martin at 29-30. Henderson is the supervisor of the cleaning personnel. Henderson depo. at 13. He has a few Aramark employees who are the direct supervisors of the cleaning personnel. *Id.*, at 13, 15. The supervisors actually do the interviewing and make the determination of who Children's Hospital will hire. *Id.*, at 14-15. Hiring and firing was actually done by the hospital. Martin depo. at 30.

Jeff Olds, who is on the cleaning staff, stated they do not strip or wax the floors inside the elevators. Olds depo. at 11. Rather, they only sweep and mop them, and clean the brass. *Id.* When they use stronger cleaners in the elevators, they wait until the fumes dissipate to release the elevator. *Id.*, at 14.

Defendant's policy for cleaning the elevators at Children's Hospital is to use Light Duty on the floors, all purpose cleaner on the walls, and stainless steel cleaner on the bars. Henderson depo. at 20. SaniMaster would only be used if someone threw up in the elevator, requiring it to be disinfected. *Id.*, at 20-21. If someone used SaniMaster against these instructions, that would be wrong. Henderson depo. at 22, 52. He heard about the plaintiff becoming sick when he reported to work the morning after her incident. Henderson depo. at 50. Lester Martin, a supervisor, told him an employee got sick from floor work defendant was doing. Henderson depo. at 50;

5

Martin depo. at 55.

Lester Martin is the third shift supervisor for cleaning personnel at Children's Hospital, but an Aramark employee. Martin depo. at 10-11. Hallways and common areas are cleaned during the third shift. *Id.*, at 14. Light Duty is used to clean the floors. *Id.*, at 16. When new employees are hired, they are trained on how to do the cleaning. *Id.*, at 19-20. Martin trained Maurice Becoats how to do the various cleaning jobs. Becoats depo. at 14. Elevator floors are not stripped or sanitized. Martin depo. at 56. They are just cleaned with Light Duty, and Martin did not think that could make anyone sick. Martin depo. at 59-60. In fact, the floor cleaners do not have the sanitizers that are used in the rooms, and the ladies that sanitize patient rooms do not clean floors. *Id.*, at 63. To clean an elevator, it is shut off, and restarted once the floor is dry. Becoats depo. at 16. SaniMaster is never used in an elevator. *Id.*, at 20. Becoats never heard of anyone getting sick from an elevator being cleaned. *Id.*, at 21.

The cleaning chemicals are delivered to the hospital by Aramark in concentrated form. Martin depo. at 31-32. When needed for use, the appropriate cleaner is diluted with water. *Id.*, at 32. The dilution and mixing is done by a machine, and not by a person. *Id.*, at 34. One person handles all the mixing by putting the relevant chemical in a station and then the machine dilutes and mixes it

appropriately. *Id.*, at 34-35.

Based on these facts, the plaintiff seeks damages on the theory that her injuries resulted from defendant's negligent or wanton breach of its duty to exercise reasonable care in the use of chemicals, cleaners and/or solutions in cleaning and/or stripping floors, and in warning appropriately when doing so. Complaint, ¶¶ 12, 15. Specifically, plaintiff asserts her injuries were the direct result of the improper use of chemical cleaners in the elevator she rode.

## II. STANDARD OF REVIEW

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986). An issue is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct.

1598, 1609 (1970). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005).

### III. LEGAL ANALYSIS

In essence, this a simple case of negligence. The plaintiff asserts that defendant, as the responsible party for maintaining the cleanliness of Children's Hospital, improperly used a chemical cleaner, thus causing her injuries. The defendant responds that the plaintiff has no evidence of this, that it did not breach any duty, that plaintiff has no evidence that a chemical cleaner caused her reaction, and

that the plaintiff has not pled that defendant is in some way liable for negligent or wanton acts of the hospital employees.

Negligence requires a showing of duty, breach, injury, and proximate cause. *See, e.g., QORE, Inc. v. Bradford Bldg.*, 25 So.3d 1116, 1123 (Ala.2009); *S.B. v. Saint James School*, 959 So.2d 72, 97 (Ala.2006). "Proximate cause is an essential element of ...negligence claims .... Proximate cause is an act or omission that in a natural and continuous sequence, unbroken by any new independent causes, produces the injury and without which the injury would not have occurred." *Lingefelt*, 2010 WL 2797404, 2  (quoting *Martin v. Arnold*, 643 So.2d 564, 567 (Ala.1994)).

Assuming that the plaintiff could establish her attack was in fact caused by a cleaning product used in the elevator, to survive summary judgment on her negligence claim, she still must prove that such product was placed there by defendant or by someone under defendant's control. Without such proof, the plaintiff cannot establish that the defendant breached any duty it may have owed to plaintiff. *See e.g., Thompson v. Mindis Metals, Inc*., 692 So.2d 805, 807 (Ala.1997).

Similarly, could the plaintiff establish that the defendant breached some duty to plaintiff to use cleaning products in a manner that does not cause harm, she must also prove that such breach was the proximate cause of her injury.  The plaintiff has no means by which to establish that the odor in the elevator was in fact due to use of

an Aramark supplied cleaning product, and not due to some other substance a doctor, nurse, patient, or visitor opened or spilled in the elevator.

In response to these arguments from defendant, the plaintiff asserts a variety of unsubstantiated facts, none of which are admissible in court and none of which tend to support a finding that the elevator floor was cleaned in a manner directed by defendant and which caused her harm. The plaintiff first points out that neither party disputes plaintiff smelled the cleaner when she entered the elevator. Plaintiff's response, at 10. The plaintiff confuses defendant's failure to refute plaintiff's allegation that she smelled a cleaner, with evidence that a cleaner was actually used on the floor of the elevator.[2] She next alleges that an "agent" of Aramark apologized to plaintiff for cleaning the floor that night. Plaintiff response, at 11. She has no idea who this person was, and no hospital employee that is employed in maintenance has stepped forward to admit using an improper cleaner in the specific elevator plaintiff rode that night. Similarly, the plaintiff has failed to produce any evidence which could even support a finding that a member of the hospital cleaning crew even cleaned that elevator that evening.

---

[2]Plaintiff's failure to understand "proximate cause" is well illustrated by her statement that "Ms. Johnson has properly established that an unknown agent proximately caused her injuries." Plaintiff's response, at 12. Without evidence of what was applied to the floor of the elevator, if anything, and by whom, if anyone, the plaintiff cannot establish that negligence by the defendant proximately caused her injuries. *See e.g., Howard v. Mitchell*, 492 So.2d 1018, 1020 (Ala.1986) ("There must be some evidence that the alleged negligence probably caused the injury.... In the absence of any evidence that the defendants' negligence probably caused the death of the plaintiff's child, the trial court properly granted the summary judgment.").

Similarly, while the defendant does not dispute that plaintiff suffered irritation of her respiratory system, and does not dispute that SaniMaster could cause respiratory tract irritation, the same does not amount to evidence that SaniMaster was used in the elevator that plaintiff rode in and in a manner directed by defendant. In fact, as recognized by plaintiff, use of this product in an elevator would not be in accordance with defendant's instructions or product labeling.

Because the plaintiff failed to address her wantonness claim in her response to the defendant's motion for summary judgment, the court deems the same abandoned. *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir.2000) ("failure to brief and argue [an] issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1284 (11th Cir.2003); *see also Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir.2001).

The defendant also argues that the plaintiff must establish that a particular cleaning solution caused her injuries through the use of expert testimony. Defendant's motion, at 9. At a minimum, to survive summary judgment, the plaintiff must establish that use of a cleaner by the cleaning crew was, in fact, the cause of her injury. *See e.g., McDonald v. Servpro*, 581 So.2d 859, 861 (Ala.Civ.App.1991). As explained by the Alabama Supreme Court,

11

> " 'Proof which goes no further than to show an injury could have occurred in an alleged way, does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause.' [*Southworth v.Shea*, 131 Ala. 419, 421, 30 So. 774, 775 (1901).]
>
> "But a nice discrimination must be exercised in the application of this principle. As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only. On the other hand, if there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence."

*Southern Ry. v. Dickson,* 211 Ala. 481, 486, 100 So. 665, 669 (1924). *Ex parte Diversey Corp.,* 742 So.2d 1250, 1254 (Ala.1999).

Because the plaintiff is unable to provide the court with any more than theoretical conjecture as to how her injury may have occurred, she is unable to survive summary judgment. The facts before this court fail to even suggest a breach of duty by defendant, let alone a breach which proximately caused plaintiff's damages. Hence, plaintiff has no more than that the defendant owed her a duty, and she suffered an injury.

Because the plaintiff has failed to produce sufficient evidence to satisfy her

burden on summary judgment that a breach of a duty occurred by anyone, the court does not delve into the issue of whether defendant should be vicariously liable for the acts of hospital employees.[3]  *See* Defendant's motion, at 14.  Taking everything the plaintiff alleges as true, she has produced no evidence that her attack was caused by a cleaning agent supplied by defendant, or applied by a member of the cleaning staff. The only evidence plaintiff has is that she got on an elevator, the doors closed, she smelled a strong odor, and she had a severe asthma attack.  Thus, there is simply no evidence that any negligent or wanton act by Aramark was the proximate cause of the plaintiff's injury.

## CONCLUSION

Having considered the foregoing, the court is of the opinion that no genuine issues of material fact remain and defendant is entitled to judgment in its favor as a matter of law.  The defendant's motion for summary judgment on the plaintiff's complaint shall be so granted by separate order.

**DONE** and **ORDERED** this the 21st day of October, 2013.

_____
INGE PRYTZ JOHNSON
SENIOR U.S. DISTRICT JUDGE

---

[3] Similarly, the court does not address defendant's argument that the plaintiff must provide expert testimony to establish that a chemical could cause the reaction she suffered.  Without some evidence that a negligent act of defendant more likely than not caused her illness, the court does not reach the issue of the need for expert testimony.